IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WILLIAM DEVITT,<br><br>       Plaintiff,<br>v.<br><br>FLASHDOT LIMITED,<br><br>PEKEN GLOBAL LIMITED,<br><br>PHOENIXFIN PRIVATE LIMITED,<br><br>CHUN GAN, AND<br><br>KE TANG,<br><br>       Defendants. | CIVIL ACTION NO. 4:24-cv-04944<br><br>**ORIGINAL COMPLAINT FOR**<br>(I)     **VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT,**<br>(II)    **VIOLATION OF THE TEXAS DTPA,**<br>(III)   **FRAUD,**<br>(IV)   **VIOLATION OF THE TEXAS THEFT LIABILITY ACT,**<br>(V)    **BREACH OF CONTRACT,**<br>(VI)   **NEGLIGENCE,**<br>(VII)  **CONVERSION, and**<br>(VIII) **IMPOSITION OF A CONSTRUCTIVE TRUST AND DISGORGEMENT OF FUNDS.**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff WILLIAM DEVITT ("Plaintiff") files this original complaint against FLASHDOT LIMITED, PEKEN GLOBAL LIMITED, PHOENIXFIN PRIVATE LIMITED, CHUN GAN, and KE TANG (collectively, "Defendants") alleging, based on Plaintiff's own knowledge as to himself and his own actions, and based on information and belief as to all other matters, as follows:

**PRELIMINARY STATEMENT**

1.     Defendants stole cryptocurrency (17.8 Bitcoin "BTC") from Plaintiff with an approximate value of $1,862,876.00 pursuant to a sophisticated global internet cryptocurrency fraud and conversion scheme.

2. Defendants played a material role in the theft of Plaintiff's assets, and upon information and belief, currently possess and/or control all or a significant portion of Plaintiff's stolen property.

3. Plaintiff brings this lawsuit to recover his stolen assets or the value thereof.

## SUBJECT MATTER JURISDICTION AND VENUE

4. This is an action for damages including pursuant to 18 U.S.C. § 1964 (the "Racketeer Influenced and Corrupt Organizations Act" or "RICO"). The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 (federal question).

5. Venue is proper in this district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b).

## THE PARTIES AND PERSONAL JURISDICTION

6. Plaintiff WILLIAM DEVITT is an individual and resident of Houston, Texas.

7. Defendants are FLASHDOT LIMITED (a business entity incorporated in the Cayman Islands), formerly known as Phoenixfin Limited, PEKEN GLOBAL LIMITED (a business entity incorporated in the Republic of Seychelles), and PHOENIXFIN PRIVATE LIMITED (a business entity incorporated in Singapore) (together, "KuCoin"), and two of KuCoin's founders and majority owners, CHUN GAN (an individual), a/k/a "Michael," and KE TANG (an individual), a/k/a "Eric."

8. Defendants have operated an online cryptocurrency exchange and trading platform through the website www.KuCoin.com and an application available for download on mobile phones, in violation of U.S. law. In fact, Kucoin is a multibillion-dollar criminal conspiracy, as the Department of Homeland Security recently exposed: "Today, we exposed one of the largest global cryptocurrency exchanges for what our investigation has found it to truly be: an alleged

multibillion-dollar criminal conspiracy. KuCoin grew to service over 30 million customers, despite its alleged failure to follow laws necessary to ensuring the security and stability of our world's digital banking infrastructure. The defendants' alleged pattern of skirting these vitally important laws has finally come to an end." (*https://www.justice.gov/usao-sdny/pr/prominent-global-cryptocurrency-exchange-kucoin-and-two-its-founders-criminally*, last accessed Dec. 16, 2024)

9. Since its founding in 2017, KuCoin has become one of the largest global cryptocurrency exchange platforms, with more than 30 million customers and billions of dollars' worth of cryptocurrency in daily trading volume. KuCoin's website touts public rankings of cryptocurrency exchanges that place KuCoin in the top five worldwide. One of these public rankings listed KuCoin as the fourth largest cryptocurrency derivatives exchange and fifth largest cryptocurrency spot exchange. KuCoin, GAN, and TANG sought to serve, and have in fact served, numerous customers located in the United States and in this district. (*Id.*)

10. At all times material hereto, Defendants have maintained and continue to maintain, private cryptocurrency wallets and cryptocurrency exchange accounts in which all of or a portion of Plaintiff's stolen cryptocurrency currently sits. Defendants have been indicted for conspiring to operate an unlicensed money transmitting business and conspiring to violate the Bank Secrecy Act by willfully failing to maintain an adequate anti-money laundering ("AML") program designed to prevent KuCoin from being used for money laundering and terrorist financing, failing to maintain reasonable procedures for verifying the identity of customers, and failing to file any suspicious activity reports. KuCoin has also been charged with operating an unlicensed money transmitting business and a substantive violation of the Bank Secrecy Act. GAN and TANG are

apparently fugitives from justice. (*https://www.justice.gov/usao-sdny/pr/prominent-global-cryptocurrency-exchange-kucoin-and-two-its-founders-criminally*, last accessed Dec. 16, 2024).

11. At all relevant times, KuCoin has been a money transmitting business required to register with the U.S. Department of Treasury's Financial Crimes Enforcement Network ("FinCEN") and, since July 2019, has been a futures commission merchant required to register with the U.S. Commodity and Futures Trading Commission ("CFTC"). As a money-transmitting business and a futures-commission merchant, KuCoin is required to comply with the applicable Bank Secrecy Act provisions requiring maintenance of an adequate AML program, including customer identity verification, or know-your-customer ("KYC") processes. AML and KYC programs ensure that financial institutions, such as KuCoin, are not used for illicit purposes, including money laundering. (*Id.*)

12. GAN, TANG, and KuCoin were aware of their U.S. AML obligations but willfully chose to flout those requirements. KuCoin failed, for example, to implement an adequate KYC process. Indeed, until at least July 2023, KuCoin did not require customers to provide any identifying information. It was only in July 2023, after KuCoin was notified of a federal criminal investigation into its activities, that KuCoin belatedly adopted a KYC process for new customers. Unfortunately, however, this KYC process applied to new customers only and did not apply to KuCoin's millions of existing customers, including the substantial number of customers based in the United States. KuCoin also never filed any required suspicious activity reports, never registered with the CFTC as a futures-commission merchant, and, through at least the end of 2023, never registered with FinCEN as a money-transmitting business. (*Id.*)

13. In fact, GAN, TANG, and KuCoin affirmatively attempted to conceal the existence of KuCoin's U.S. customers in order to make it appear as if KuCoin was exempt from U.S. AML

and KYC requirements. Despite the fact that KuCoin gathered and tracked location information for its customers, KuCoin actively prevented its U.S. customers from identifying themselves as such when opening KuCoin accounts. And KuCoin lied to at least one investor, in 2022, about where its customers were located, falsely representing that it had no U.S. customers when, in truth, KuCoin had a substantial U.S. customer base. In fact, in a number of social media posts, KuCoin actively marketed itself to U.S. customers as an exchange where they could trade without having to undergo KYC. For example, KuCoin stated in an April 2022 message on Twitter that "KYC is not supported to USA users, however, it is not mandatory on KuCoin to do KYC. Usual transactions can be done using an unverified account." (*Id.*)

14. As a result of KuCoin's willful failures to maintain the required AML and KYC programs, KuCoin has been used as a vehicle to launder large sums of criminal proceeds, including proceeds from darknet markets and malware, ransomware, and fraud schemes. Since its founding in 2017, KuCoin has received over $5 billion, and sent over $4 billion, of suspicious and criminal proceeds. Many KuCoin customers used its trading platform specifically because of the anonymity of the services it provided. In other words, KuCoin's no-KYC policy was integral to its growth and success. (*Id.*) Plaintiff has been victimized by KuCoin's schemes and nefarious policies.

15. Defendants are subject to this Court's specific personal jurisdiction pursuant to principles of due process and FRCP 4(k)(2), the federal long-arm statute, because (1) they each have substantial contacts with the United States and have committed torts, crimes, and breaches in the United States, including in this district; and (2) they are not subject to jurisdiction in any state's courts of general jurisdiction. Upon information and belief, Defendants have received a substantial portion of revenue from customers located in the United States, including from customers residing

5

in the district. Defendants are also subject to this Court's specific personal jurisdiction pursuant to the Texas Long Arm Statute, due at least to Defendants' substantial business in the State of Texas and in this forum, including (i) at least the torts, crimes, and breaches committed by Defendants vis-à-vis Plaintiff and his stolen assets as alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this district. Defendants are also subject to this Court's specific and general personal jurisdiction due at least to Defendants' substantial business in this forum, including (i) at least a portion of the torts, crimes, and breaches alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this district. Specifically, Defendants intend to and do business in Texas, directly or through intermediaries, and offer their products and/or services, including those accused herein, to customers and potential customers located in Texas, including in this district.

16.     Defendants are attempting to escape United States laws by restricting service to the United States and requiring withdrawal of assets by December 17, 2024. As of December 16, 2024, the KuCoin.com webpage displays the following message: "The United States is currently a restricted service area for KuCoin. US users' accounts have been transitioned to a 'Withdrawal Only' status, allowing for login and withdrawal services only. US users are required to withdraw their assets by 00:00 (UTC-5) on December 17, 2024. After this date, if you have any questions regarding unwithdrawn assets, please contact our customer support team. Please be assured that your assets remain secure at all times. For New York users, please adhere to our earlier notification regarding users in New York state. We apologize for any inconvenience this may cause. If you

are not from a restricted service area, please access our platform from a non-restricted area." *See* www.KuCoin.com.

## ALLEGATIONS COMMON TO ALL COUNTS

### A. Defendants Execute an International Cryptocurrency Theft Scheme.

17. On or about March 8, 2022, Defendants connected with Plaintiff through KuCoin.com. Plaintiff initially deposited three BTC to a KuCoin.com wallet at the address 392FC7anKVU3WG5u9Gtg6UY7wuzAntRej7. Over approximately the next eight months, Plaintiff deposited an additional 14.8 BTC to the same wallet at the same address.

18. Defendants misrepresented that Plaintiff's cryptocurrency was safe and secure at KuCoin.com.

19. Plaintiff repeatedly attempted to retrieve his 17.8 BTC by contacting KuCoin.com on numerous occasions and providing the validating details to access his account.

20. Plaintiff has not heard from Defendants since. The acts of each Defendant were committed knowingly, willfully, intentionally, with actual awareness, or with actual malice. In order to punish Defendants for such conduct and to deter such actions and/or omissions in the future, Plaintiff seeks recovery of exemplary and punitive damages to the full extent permitted by Texas law.

### B. Plaintiff's Forensic Tracking of His Stolen Cryptocurrency

21. Cryptocurrency is a digital asset, which may be a medium of exchange, for which generation or ownership records are supported through a distributed ledger technology that relies on cryptography, such as a "blockchain." When a transaction is made on the blockchain it is assigned a "transaction hash" ("TXID"). A transaction hash is a unique string of characters that is given to every transaction that is verified and added to the blockchain. A TXID is used to uniquely

identify a particular transaction. All on-chain transactions (the transactions from or to external addresses) have a unique TXID that can be seen in transaction details. All on-chain transactions (depositing and withdrawing of funds) have a unique TXID that can be found in transaction details.

22. Plaintiff made payments to Coinbase to fund his KuCoin.com wallet.

23. Plaintiff sent 17.8 BTC to the following wallet controlled by Defendants: 392FC7anKVU3WG5u9Gtg6UY7wuzAntRej7.

24. The 392FC7anKVU3WG5u9Gtg6UY7wuzAntRej7 wallet currently has a balance of 0 BTC and has had 36 transactions, receiving a total of 21.25937098 BTC and sending a total of 21.25937098 BTC—none of them sent to Plaintiff. The dates and the amounts of the transactions are publicly available and occurred between March 8 and October 2, 2022.

25. Defendants thus misappropriated a total value of approximately $1,862,876.00 from Plaintiff.

26. Plaintiff has thus suffered substantial damages.

27. If unchallenged, Defendants will continue their fraudulent international criminal crypto theft scheme, stealing from unsuspecting persons and businesses in the U.S., in this district, and around the world.

28. All conditions precedent to the maintenance of this action have been performed, have occurred, or have been waived or excused.

29. Plaintiff has retained the undersigned attorneys to bring this action and is obligated to pay a reasonable attorney's fee for their services. Plaintiff is entitled to an award of their attorney's fees against Defendants, pursuant to at least 18 U.S.C. § 1964(c) and Tex. Civ. Prac. & Rem. Code §§ 38.002 and 134.005.

## COUNT I:  RACKETEERING IN VIOLATION OF 18 U.S.C. § 1961 *et seq*

30. Plaintiff adopts and realleges the allegations set forth in paragraphs 1 through 29 above as if fully and expressly set forth herein and further alleges as follows.

31. The operation of www.KuCoin.com by Defendants, a sophisticated global internet cryptocurrency fraud and conversion scheme, constitutes a racketeering operation in violation of 18 U.S.C. 1962(a)-(d).

32. Defendants' operation of www.KuCoin.com and its associated business operations, transactions, and representations (the "RICO Enterprise") falls within the meaning of 18 U.S.C. § 1961(4).

33. The RICO Enterprise engaged in a pattern of racketeering activity.

34. Each Defendant's participation was effective partly because they each mimicked an actual on-going business with a presence in the marketplace: the United States and indeed worldwide.

35. As co-conspirators, the unlawful conduct of each member of the RICO Enterprise is attributed to every member, i.e., FLASHDOT LIMITED, PEKEN GLOBAL LIMITED, PHOENIXFIN PRIVATE LIMITED, CHUN GAN, and KE TANG.

36. As set forth above, the RICO Enterprise engaged in at least the following predicate acts of racketeering within the meaning of 18 U.S.C. § 1961(1):  wire fraud in violation of 18 U.S.C. § 1343; mail fraud in violation of 18 U.S.C. § 1341; laundering of monetary instruments in violation of 18 U.S.C. § 1956; engaging in monetary transactions in property derived from Defendants' unlawful activity in violation of 18 U.S.C. § 1957; and operating unlicensed money transmitting businesses in violation of 18 U.S.C. § 1960 and 31 U.S.C. § 5330.  Defendants have been indicted in the Southern District of New York for their violation of 31 U.S.C. § 5330.  32.

37. The predicate acts set forth in this Complaint included (1) defrauding Plaintiff beginning on March 8, 2022 and continuing to the present, regarding the legality and security of Plaintiff's account at Kucoin; such acts were perpetrated by Defendants through a website, telephone calls, and messages directed to Plaintiff in this district; and (2) operating unlicensed money transmitting businesses in violation of 18 U.S.C. § 1960 and 31 U.S.C. § 5330 consistently since at least 2019.

38. Each of Plaintiff's cryptocurrency transfers to Defendants' control was based on misrepresentations by Defendants. Each misrepresentation constituted a discrete act of racketeering activity, resulting in discrete and different instances of damage to Plaintiff.

39. The predicate acts alleged in this Complaint are related, in that they have the same or similar purposes, results, participants, and methods of commission, and are otherwise interrelated by distinguishing characteristics and are not isolated events. The related criminal schemes set forth in this Complaint constitute a "pattern or patterns of racketeering activity" as defined in 18 U.S.C. § 1961(5).

40. The Defendants engaged in two or more predicate acts of racketeering within a period of less than ten years and committed all such acts after October 15, 1970.

41. The information that would establish further predicate acts and further acts of racketeering is solely within the control of Defendants. Due to the global nature of their criminal scheme, and given the great distances between the members of the RICO Enterprise and their unsuspecting victims, including Plaintiff (e.g., throughout the United States, in this district, and throughout the world), practicality dictates that the RICO Enterprise members communicated with each other, with Plaintiff, with victims similarly situated to Plaintiff, through use of mail and wire. Plaintiff require discovery to ferret out the further extent of predicate acts and further acts of

racketeering, including the identity of similarly situated defrauded victims and the scope of the systematic fraud.

42. Defendants have received income derived, directly or indirectly, from a pattern of racketeering activity and used or invested, directly or indirectly, part of such income, or the proceeds of such income, in acquisition of an interest in, or in the establishment or operation of, the RICO Enterprise, an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce in violation of 18 U.S.C. § 1962(a).

43. Defendants through a pattern of racketeering activity maintain, directly or indirectly, an interest in or control of the RICO Enterprise, an enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce, in violation of 18 U.S.C. § 1962(b).

44. Each Defendant was associated with the RICO Enterprise, and conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through the pattern of racketeering activity described herein, in violation of 18 U.S.C. § 1962(c).

45. Each Defendant entered into a conspiracy to conduct or participate, directly or indirectly, in the conduct of the RICO Enterprises' affairs through the pattern of racketeering activity described herein, in violation of 18 U.S.C. § 1962(d).

46. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered damages.

## COUNT II:  VIOLATION OF THE TEXAS DTPA

47. Plaintiff adopts and realleges the allegations set forth in paragraphs 1 through 46 above as if fully and expressly set forth herein and further alleges as follows.

48. Defendants have, at all times relevant hereto, engaged in conduct that constitutes "trade" and "commerce," as those terms are defined in § 17.45 of the Texas Deceptive Trade Practices Act (the "DTPA").

49. The DTPA prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." DTPA § 17.46(a).

50. In violation of the DTPA, in recently imposing a December 17, 2024, deadline for U.S. residents to make withdrawals from Kucoin while simultaneously preventing Plaintiff from withdrawing his assets, Defendants (a) engaged in false, misleading, and deceptive acts or practices in the conduct of a trade or commerce; (b) passed off goods or services as those of another; (c) caused confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (d) caused confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another; (e) represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not; (f) represented that goods or services are of a particular standard, quality, or grade, when they are of another; (g) advertised goods or services with intent not to sell them as advertised; and (h) failed to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.. Plaintiff has been damaged in an amount to be determined by the jury.

51. The acts of each Defendant were committed knowingly, willfully, intentionally, with actual awareness, or with actual malice. In order to punish Defendants for such conduct and

to deter such actions and/or omissions in the future, Plaintiff seeks recovery of treble, exemplary, and punitive damages to the full extent permitted by Texas law.

## COUNT III: FRAUD

52. Plaintiff adopts and realleges the allegations set forth in paragraphs 1 through 51 above as if fully and expressly set forth herein and further alleges as follows

53. Defendants made a material representation that they would keep and safeguard Plaintiff's assets placed in care of Kucoin.

54. The representation was false.

55. Defendants knew the representation was false or made it recklessly without any knowledge of its truth.

56. Defendants intended to induce Plaintiff to act upon the representation, which caused injury to Plaintiff.

57. Plaintiff has been damaged in an amount to be determined by the jury and further seeks punitive damages as permitted by Texas law.

## COUNT IV: VIOLATION OF THE TTLA

58. Plaintiff adopts and realleges the allegations set forth in paragraphs 1 through 57 above as if fully and expressly set forth herein and further alleges as follows

59. Defendants committed theft in violation of the Texas Theft Liability Act (the "TTLA") by recently imposing a December 17, 2024, deadline for U.S. residents to make withdrawals from Kucoin while simultaneously preventing Plaintiff from withdrawing his assets.

60. Plaintiff has been damaged in an amount to be determined by the jury.

61. Plaintiff incorporates and adopts by reference the allegations contained in each and every preceding paragraph of this petition.

62. Defendants committed theft in violation of the Texas Theft Liability Act (the "TTLA").

63. Plaintiff has been damaged in an amount to be determined by the jury.

## COUNT V: BEACH OF CONTRACT

64. Plaintiff adopts and realleges the allegations set forth in paragraphs 1 through 63 above as if fully and expressly set forth herein and further alleges as follows

65. Upon information and belief, there exists one or more valid contracts among Defendants.

66. Plaintiff is a third-party beneficiary of one or more of those contracts.

67. Defendants contracted with each other directly and primarily for the benefit of third parties, including Plaintiff. In contracting with each other, Defendants intended to secure a benefit for Plaintiff and others.

68. A valid contract exists between Plaintiff and KuCoin.

69. Plaintiff performed or tendered performance as contractually required by the aforementioned contracts.

70. Defendants breached the contract by failing to perform or tender performance as required.

71. Plaintiff sustained damages due to the aforementioned breaches.

72. Plaintiff has been damaged in an amount to be determined by the jury.

## COUNT VI: NEGLIGENCE

73. Plaintiff adopts and realleges the allegations set forth in paragraphs 1 through 72 above as if fully and expressly set forth herein and further alleges as follows.

74. Plaintiff incorporates and adopts by reference the allegations contained in each and every preceding paragraph of this petition.

75. Defendants owed a duty to Plaintiff.

76. Defendants breached that duty by recently imposing a December 17, 2024, deadline for U.S. residents to make withdrawals from Kucoin while simultaneously preventing Plaintiff from withdrawing his assets.

77. Defendants' breaches are the proximate cause of Plaintiff's damages.

78. Plaintiff has been damaged in an amount to be determined by the jury.

### COUNT VII: CONVERSION

79. Plaintiff adopts and realleges the allegations set forth in paragraphs 1 through 78 above as if fully and expressly set forth herein and further alleges as follows

80. As more fully alleged above, Defendants misappropriated Plaintiff's funds.

81. By recently imposing a December 17, 2024, deadline for U.S. residents to make withdrawals from Kucoin while simultaneously preventing Plaintiff from withdrawing his assets, Defendants have converted or seek to convert Plaintiff's assets to their own use or to the use of others not entitled thereto, and have exercised dominion and control over the funds to Plaintiff's exclusion and detriment.

82. Plaintiff has suffered damages as a direct and proximate result of Defendants' conversion.

### COUNT VIII: IMPOSITION OF A CONSTRUCTIVE TRUST AND DISGORGEMENT OF FUNDS

83. Plaintiff adopts and realleges the allegations set forth in paragraphs 1 through 82 above as if fully and expressly set forth herein and further alleges as follows.

84. This is an action to impose a constructive trust upon the property taken from Plaintiff that is currently held by one, some, or all Defendants.

85. This action further calls for the restoration to Plaintiff of that wrongfully obtained property.

86. As set forth above, Defendants -- through conversion, theft, and/or other questionable means -- obtained Plaintiff's cryptocurrency, which in equity and good conscience Defendants should not be permitted to hold.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands that judgment be entered against Defendants, jointly and severally, as follows:

(a) damages;

(b) statutory treble damages pursuant to 18 U.S.C. § 1964(c) and the DTPA;

(c) punitive damages to the full extent permitted by law;

(d) costs, including reasonable attorneys' fees, pursuant to 18 U.S.C. § 1964(c), the DTPA, the Texas Theft Liability Act, and Tex. Civ. Prac. & Rem. Code § 38.002;

(e) the equitable imposition of a constructive trust over the property taken from Plaintiff that is currently under the control of Defendants;

(f) costs of litigation;

(g) pre- and post-judgment interest; and

(h) such other and further relief as this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Dated: December 16, 2024

Respectfully submitted,

By: */s/ Fred I. Williams*
Fred I. Williams
Texas State Bar No. 00794855
Eric Carr
Texas State Bar No. 24091261
WILLIAMS SIMONS & LANDIS PC
The Littlefield Building
601 Congress Avenue, Suite 600
Austin, TX 78701
Tel: 512-543-1354
fwilliams@wsltrial.com
ecarr@wsltrial.com

*Attorneys for Plaintiff, WILLIAM DEVITT*